OPINION
{¶ 1} Brian S. Wiley appeals from his conviction and sentence on charges of improperly discharging a firearm at or into a habitation with a firearm specification and having a weapon while under disability.
 {¶ 2} Wiley advances two assignments of error on appeal. First, he challenges *Page 2 
the legal sufficiency and manifest weight of the evidence to support his convictions. Second, he contends the trial court erred in admitting into evidence recorded jailhouse telephone conversations. Wiley asserts that they should have been excluded under Evid. R. 403.
 {¶ 3} The record reflects that a belligerent Wiley approached a crowd outside the Pinewood Circle apartments and attempted to instigate a fight with Darnell Bailey. During the incident, Wiley handed a pistol to his close friend, Brian Blanton. A neighbor, Jaquetta Washington, then saw Bailey pull out his own gun, fire once in the air, and shoot toward Wiley and Blanton. One of Bailey's shots killed Blanton. The shooting dispersed the crowd.
 {¶ 4} A short time later, Wiley returned to the complex and stood outside an apartment occupied by Aisha Minor. The record reflects that Bailey was the father of one of Minor's four children. Minor and her children were inside the apartment in an upstairs bedroom near the front door. Minor watched through a small window as Wiley fired several shots from a handgun into her front door. Her neighbor, Jaquetta Washington, also witnessed the incident. According to Washington, Wiley fired three or four shots into the door with a black handgun. Washington was approximately three or four car lengths away from Wiley, who she knew, and nothing obstructed her view. Minor and Washington later both identified Wiley as the person who shot into the apartment. Bullet holes and a spent round also were discovered in Minor's front door. Following his arrest, Wiley spoke on a jail telephone with his girlfriend, Ciara Lewis. During the calls, which were recorded, he discussed having "Little J" get rid of a revolver so it could not be used against him. A jury ultimately convicted Wiley of the charges against him, and the trial *Page 3 
court imposed an aggregate sentence of eleven years in prison.
 {¶ 5} In his first assignment of error, Wiley challenges the legal sufficiency and manifest weight of the evidence to support his convictions. He stresses the lack of physical evidence that he shot at Minor's apartment. He further argues that Minor's testimony was discredited because she initially lied to police about Bailey having been present that night. Finally, he contends a question from the jury revealed confusion about the sequence of events. As a result, Wiley asserts that his convictions were not based on legally sufficient evidence and were against the manifest weight of the evidence.
 {¶ 6} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v.Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 7} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in *Page 4 
the evidence, the trier of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 8} With the foregoing standards in mind, we conclude that Wiley's convictions are based on legally sufficient evidence and are not against the manifest weight of the evidence. Viewing the evidence in a light most favorable to the prosecution, the jury reasonably could have found Wiley guilty of knowingly discharging a firearm at or into an occupied structure in violation of R.C. 2923.161(A)(1). The eyewitness testimony from Minor and Washington was legally sufficient to support the conviction and the firearm specification. We reach the same conclusion with regard to Wiley's conviction for having a weapon while under disability. The State presented evidence that he was under disability due to a prior cocaine possession charge. Therefore, we find legally sufficient evidence to support Wiley's convictions.
 {¶ 9} The convictions also are not against the manifest weight of the evidence. The State's theory was that Wiley took revenge on Minor by shooting at her apartment because Bailey, the father of her child, had killed Wiley's good friend Blanton. The eyewitness testimony from Minor and Washington supports a finding that Wiley shot at Minor's front door. Both witnesses knew Wiley and had an unobstructed view at close range. For his part, Wiley presented testimony from Chantay Blanton, who claimed she did not see him with a gun that night. Wiley also testified in his own defense and denied *Page 5 
having a gun or shooting the door. The jury was in the best position to evaluate the credibility of these witnesses, taking into account the lack of physical evidence linking Wiley to the shooting and the fact that Minor initially lied to police about Bailey's presence that night.
 {¶ 10} Although a weight-of-the-evidence argument permits a reviewing court to consider the credibility of witnesses, that review must be tempered by the principle that weight and credibility questions are primarily for the trier of fact. State v. Goldwire, Montgomery App. No. 19659, 2003-Ohio-6066, at ¶ 13, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "`Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'" Id. at ¶ 14, quotingState v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 11} With the foregoing principles in mind, we believe the jury acted reasonably in crediting the State's version of events and finding Wiley guilty. Having reviewed the record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against Wiley's convictions.
 {¶ 12} Wiley's final argument regarding a question from the jury does not alter our *Page 6 
conclusion. During deliberations, the jury gave the trial court the following written question: "Can the time line be defined? When the police arrived at the scene for Brian Blanton's shooting, was Aisha's apartment already shot up?" The trial court properly responded, without objection, by advising the jury to use its collective recollection to determine the facts. Nothing about the jury's question or the trial court's response persuades us that Wiley's convictions are against the weight of the evidence. His first assignment of error is overruled.
 {¶ 13} In his second assignment of error, Wiley contends the trial court erred in admitting into evidence recorded jailhouse telephone conversations. He asserts that they should have been excluded under Evid. R. 403.
 {¶ 14} The record reflects that the State played excerpts of three recorded telephone conversations between Wiley and Ciara Lewis, his girlfriend. A third person identified as "Niecy" also participated in one of the calls. In the first call, Wiley told Lewis that he needed to talk to "Little J." He also instructed Lewis to "make sure that thing didn't fall into the wrong hands." He added: "That's the only thing they can really nail me." Later, he told Lewis to ask whether "he got rid of it" and, again, to "make sure it didn't fall into the wrong hands, like the fucking law." The following day, Wiley instructed Lewis to call Niecy and "[m]ake sure they ain't got that thing." Wiley added: "That's what'll do me for real, if they get that and he had it." Finally, Wiley, Lewis, and Niecy participated in a three-way call. During that conversation, Wiley asked Niecy, who was Little J's girlfriend, whether "he still got that little revolver thing." Niecy responded, "No, he sold it." Wiley replied, "All right, good. As long as they ain't got that, I'm cool."
 {¶ 15} Wiley first contends it is unclear whether the trial court ever considered his *Page 7 
argument that the taped phone calls were not relevant. The record reflects, however, that the trial court expressly found the calls to be "relevant to this case." (Trial transcript at 13). We find no error. The telephone conversations support an inference that Wiley disposed of a revolver to prevent it from falling into the hands of police. The conversations are relevant because Wiley was accused of using a handgun to shoot at Minor's apartment, he denied doing so, and no weapon ever was recovered by police. Finally, we do not believe the probative value of the conversations was substantially outweighed by the danger of unfair prejudice or confusion of the issues, as required for exclusion under Evid. R. 403(A). The State presented a redacted version of the conversations, and Wiley declined to have the jury hear the complete recordings. Although Wiley contends he and Lewis were not talking about this case when they discussed a revolver, the jury was entitled to conclude otherwise. Wiley's second assignment of error is overruled.
 {¶ 16} Having overruled both assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
GRADY and FROELICH, JJ., concur.
Copies mailed to:
Mathias H. Heck, Jr. Johnna M. Shia Mark A. Fisher Hon. Barbara P. Gorman *Page 1