[Cite as *State v. Lovano*, 2013-Ohio-1183.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98537

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SALVATORE LOVANO

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551598

**BEFORE:**   Boyle, J., Stewart, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   March 28, 2013

**ATTORNEYS FOR APPELLANT**

Margaret W. Wong
Scott E. Bratton
Margaret Wong & Associates Co., L.P.A.
3150 Chester Avenue
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Mary Weston
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Salvatore Lovano, appeals his conviction for aggravated assault. He raises two assignments of error for our review, i.e., that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶2} Lovano was indicted on three counts: two counts of kidnapping, in violation of R.C. 2905.01(A)(1) and (A)(3), and one count of felonious assault, in violation of R.C. 2903.11(A)(1). The following evidence was presented at a bench trial.

{¶3} Lynn Sidoti testified that Lovano had been her boyfriend on and off since she had met him three years previously. When the incident at issue occurred, June 19, 2011, they were dating. She said that earlier in the day on June 18, Lovano had been at her house. Sidoti said that Lovano drank beer "all day" before they went out. Around 9:00 or 9:30 p.m., they went to the Boneyard to listen to Lovano's friend's band. Sidoti said that she had five beers at the bar. Sidoti did not pay attention to how many beers Lovano had, but she said that he probably had "more than 10."

{¶4} When they left the bar around 1:30 or 2:00 a.m., Sidoti testified that as soon as they got into the vehicle, Lovano "made a terrible comment about [her] son being lazy," and they got into an argument. Sidoti said they argued all the way home, which

took about 20 minutes. While her testimony varied as to when it began, Sidoti explained that the argument became physical at some point. She said that while Lovano was driving, he started "beating" her "all the way down [her] left side." Sidoti testified that Lovano punched her on her arms, legs, back, head, and face.

{¶5} Sidoti testified that she hit Lovano on his right shoulder during the ride home from the bar. Sidoti first said that she hit Lovano first. She then stated that she did not remember when she hit him, but said that it was after Lovano hit her first.

{¶6} Sidoti testified that she attempted to get out of Lovano's truck, but he would not let her. She said that she kept asking him to stop the car, but he refused. She said that he never stopped the whole way home, from North Royalton (where the bar was located) to Parma. She also stated that she tried to get her cell phone out of her purse, but he grabbed it and pretended to throw it out the window. She believed he threw it out the window. She did not learn until later that he had not done so. On cross-examination, she said that she later learned that police found her cell phone in her purse.

{¶7} Sidoti testified that when they pulled into her driveway, Lovano "gave [her] the last blow to [her] face," and that is when he broke her nose. Sidoti said that Lovano told her "not to come in * * * to let him go in and get his shit out of the house * * *" and then he was going to "get out" of there. Sidoti was upset that Lovano did not "come back to look to see if [she] was all right." She explained that she was "spinning" in her driveway because she did not know what to do.

{¶8}    About five or ten minutes later, she said she saw her neighbor's boyfriend, Justin Bly, leaving her neighbor's house.   Sidoti had never met Bly before that night and did not know his name.   She ran up to his car to ask him if he had a cell phone so that she could call the police.   She told Bly that Lovano had just broken her nose.   Bly asked her where Lovano was; she told him, "he's in my house right now getting his things out."

{¶9}    Sidoti heard Bly talking to Lovano in the backyard, so she went into her house and locked the doors until the police came.   She told the police what happened. Emergency medical personnel took her to Parma Hospital.   She explained that her nose is permanently crooked because doctors said they could not fix it.   She also explained that she now has trouble breathing.   Photos of her crooked nose were entered into evidence.   Her medical records from that night were also entered into evidence, stating that she had a nasal bone fracture.

{¶10} Justin Bly testified that he is a police officer for the city of Lakewood, but he was not on duty on the night of the incident.   He said that as he was leaving his girlfriend's house, Sidoti came running up to his car "waving her arms hysterically."   He said she seemed to be "in a panic," and had "blood all over her face."   Bly further stated that it appeared as if Sidoti's nose "may have been broken and she just kept screaming and yelling; asked if [he] had a cell phone." Bly called the Parma Police Department. Bly then went to the back of Sidoti's house to talk to Lovano to try to get him to stay there until the Parma police came.   On cross-examination, Bly agreed that Lovano

complied and remained on the scene.

{¶11} The court asked Bly if he witnessed Sidoti and Lovano interact. Bly said that he had. Bly testified that when he was talking to Lovano in Sidoti's backyard, Sidoti came back there and "the two began arguing." Bly "intervened and separated them," and Sidoti went into her house. When the court asked who started it, Bly replied that he believed it was "mutual."

{¶12} The court also asked Bly if he had ever seen anyone intoxicated. Bly replied that he had. The court then asked Bly if either Sidoti or Lovano were intoxicated. Bly replied that they both were intoxicated.

{¶13} Upon further questioning by the state, Bly explained that Lovano "was very belligerent," and "very highly intoxicated; very unsteady on his feet, slurring words." Upon further cross-examination, Bly agreed that Sidoti was "pretty close" to being as intoxicated as Lovano. He further agreed that when Sidoti came into the backyard when he was talking to Lovano, she started the fight.

{¶14} Officer Todd Hanley of the Parma Police Department testified that when he arrived on the scene, Lovano was sitting on Sidoti's back porch. Other officers remained with Lovano, while Officer Hanley went inside to talk to Sidoti. He said that Sidoti was hysterical and had blood all over her face. At the time they took the photo of her, she had wiped some of the blood off of her face.

{¶15} Officer Hanley identified photos of Lovano's car that showed drops of blood on the "armrest" of the inside passenger door, and several drops of blood on the

"interior doorjamb" on the passenger side, and in the driveway just outside the passenger door. Officer Hanley stated that they did not test the samples of blood to verify that they were blood or to verify that they were Sidoti's blood.

{¶16} Officer Hanley said that Lovano was calm when they walked up to him. Officer Hanley stated that Lovano told them without being asked that Sidoti had fallen in her driveway. Officer Hanley did not look at Lovano's hands, but said that he did not see any injuries on Lovano that night.

{¶17} Lovano moved for a Crim.R. 29 acquittal, which the trial court denied.

{¶18} At the conclusion of the bench trial, the trial court found Lovano not guilty of the two kidnapping charges and not guilty of felonious assault, but guilty of "the lesser-included offense of aggravated assault."[1] The trial court sentenced Lovano to eleven months of community control sanctions and six months in the county jail.

## Sufficiency and Weight of the Evidence

{¶19} In his first assignment of error, Lovano contends that his aggravated assault conviction was against the manifest weight of the evidence. Lovano raises three issues to support his arguments: (1) that the evidence does not show that he assaulted Sidoti or caused her serious physical harm, (2) that the police never tested the blood that was found at the scene to confirm that it was in fact blood and that it was Sidoti's blood, and (3) that

---

[1] The trial court was incorrect in its characterization of the offense because aggravated assault is an inferior-degree offense of felonious assault, rather than a lesser-included offense. *State v. Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, ¶ 25 (8th Dist.), citing *State v. Deem*, 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988).

Sidoti's testimony was inconsistent and unbelievable.

{¶20} In his second assignment of error, arguing that his conviction was not supported by sufficient evidence, he does not raise new issues, i.e., he relies only on the arguments he raised in his first assignment of error with respect to manifest weight of the evidence. Thus, although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we will address these issues together, while ensuring that we apply the distinct standards of review to Lovano's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶21} In *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, the Ohio Supreme Court explained that in reviewing a claim challenging the manifest weight of the evidence:

> The question to be answered * * * is whether "there is *substantial* evidence upon which a [trier of fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt." In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [trier of fact] "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

(Citations omitted.) *Id.* at ¶ 81.

{¶22} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶23}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Leonard* at ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶24}** Aggravated assault under R.C. 2903.12(A)(1) states that

> [n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another.

**{¶25}** Lovano argues that the state did not present sufficient evidence with respect to two elements of aggravated assault, namely, assault (knowingly causing) and serious physical harm. He maintains that the evidence does not show that he assaulted Sidoti or that he caused her serious physical harm.

**{¶26}** "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). It is well established that one may be presumed to intend results that are the natural, reasonable, and probable consequences of his voluntary acts. *State v. Sellers*, 5th Dist. No. 12CAA020012, 2012-Ohio-5546, ¶ 74, citing *State v. Farmer*, 156 Ohio St. 214, 102 N.E.2d 11 (1951).

**{¶27}** R.C. 2901.01(A)(5) defines "serious physical harm" and provides that it means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶28}** Sidoti testified that Lovano hit her multiple times and broke her nose with the last punch. She further testified that her nose was permanently misshapen (i.e., crooked) because the doctor said that it could not be fixed and that she has had trouble breathing since the break. She also stated that her nose was not crooked before Lovano punched her. Photos were admitted into evidence showing that Sidoti's nose was disfigured. Sidoti's medical records were admitted as well, evidencing that she had a nasal bone fracture on the night of the incident. We find that Sidoti's testimony, if believed, is sufficient to establish that Lovano knowingly caused Sidoti serious physical harm under R.C. 2901.01(A)(5)(d) (any harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement).

**{¶29}** The only question that remains for purposes of addressing Lovano's weight-of-the-evidence issues is whether Sidoti broke her own nose by falling out of the car, as Lovano contends, or whether Lovano caused Sidoti's broken nose by punching her. Lovano claims that the police failed to test "the alleged blood" found inside

Lovano's truck to determine if it was, in fact, blood, and more importantly, to determine if it was Sidoti's blood. He also argues that the police failed to take any pictures of Lovano's hands to determine if they showed evidence of "beating a woman for twenty minutes." Finally, Lovano points to Sidoti's credibility, arguing that "the only evidence of what occurred was offered by an extremely intoxicated woman whose story was implausible, incredible, and riddled with blatant, material inconsistencies on the very issues that go to the heart of the case."

{¶30} Although police did not test the "alleged" blood samples that were photographed inside and outside of the passenger side of Lovano's truck, they did not have to. Officer Hanley testified that the spots appeared to be blood. Further, Sidoti, Officer Hanley, and Bly all testified that Sidoti had blood all over her face. The state also introduced photos that police took showing the spots that Officer Hanley had described. The trial court, as the trier of fact, could evaluate all of this evidence.

{¶31} Further, defense counsel made sure that the trial court was well aware of the fact that police did not test the blood samples or take photos of Lovano's hands. Additionally, defense counsel thoroughly raised the issue of Sidoti's credibility at trial, pointing out her intoxication and the inconsistencies in her testimony. Defense counsel further argued extensively that because Sidoti was intoxicated, she could have fallen out of Lovano's truck, breaking her own nose. Again, these issues were for the trier of fact to determine after hearing all of the evidence.

{¶32} Regarding Sidoti's credibility, we find that the trial court was in a much

better place than we are to determine whether she was telling the truth. Although a weight-of-the-evidence argument permits a reviewing court to consider the credibility of witnesses as the thirteenth juror, that review must be tempered by the principle that weight and credibility questions are primarily for the trier of fact. *State v. Goldwire*, 2d Dist. No. 19659, 2003-Ohio-6066, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Because the factfinder has the opportunity to see and hear the witnesses, appellate courts must exercise caution before finding that a judgment is against the manifest weight of the evidence. *Id.* at ¶ 14. Substantial deference must be extended to the factfinder's determinations of credibility. *Id.* Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. *Hill v. Briggs*, 111 Ohio App.3d 405, 412, 676 N.E.2d 547 (10th Dist.1996). Thus, we conclude that the trial court, as the trier of fact, acted well within its discretion in believing Sidoti's testimony and finding her allegations to be true.

{¶33} Accordingly, after examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice such that Lovano's conviction must be reversed and a new trial ordered.

{¶34} Accordingly, Lovano's conviction is supported by sufficient evidence and is not against the weight of the evidence. Lovano's first and second assignments of error are overruled.

**{¶35}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
                         MARY J. BOYLE, JUDGE

MELODY J. STEWART, A.J., and
TIM McCORMACK, J., CONCUR